## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Prime Core Technologies Inc., *et al.*,<br><br>Debtors. | Case No. 23-11161 (JKS)<br><br>Chapter 11<br><br>(Jointly Administered) |
| PCT LITIGATION TRUST, in its individual capacity and on behalf of Prime Core, Technologies Inc. and Prime Trust, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JON JILES, an individual; THOMAS PAGELER, an individual; RODRIGO VICUNA, an individual; GEORGE THOMAS LEWIS BRANDL, an individual; ROGER WANG, an individual; and MICHAEL SMITH, an individual,<br><br>Defendants. | Adv. Pro. No. 25-52026 (JKS) |

## DEFENDANT JON JILES'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Gregory Strong (No. 4664)
CAHILL GORDON & REINDEL LLP
221 W. 10th Street
3rd Floor
Wilmington, DE 19801
(302) 884-0001
GStrong@cahill.com

Samson A. Enzer (*pro hac vice* forthcoming)
John MacGregor (*pro hac vice* forthcoming)
Ivan Torres (*pro hac vice* forthcoming)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005

(212) 701-3000
Senzer@cahill.com
Jmacgregor@Cahill.com
Itorres@cahill.com

*Attorneys for Defendant Jon Jiles*

Dated: October 13, 2025

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF THE ARGUMENT .......................................................................... 1

STATEMENT OF THE FACTS ................................................................................. 5

LEGAL STANDARD ............................................................................................... 7

ARGUMENT .......................................................................................................... 8

    I.      Plaintiff Is Not Entitled To A Declaratory Judgment. ..................................... 8

    II.     The Breach Of Fiduciary Duty Claim Fails Under Delaware Law. ............................. 11

        A.    Plaintiff Has Not Adequately Alleged That Jiles Breached Any Duty......................... 12

        B.    The Business Judgment Rule Applies To Jiles's Decision To Trust The Management Team To Investigate The Issue And Attempt To Gain Access To The Wallet. ........... 15

    III.    The Breach of Fiduciary Duty Claim Fails Under Nevada Law. ................................ 19

    IV.    Plaintiff Has Failed To Adequately Allege Breach Of The Implied Covenant. ........... 20

    V.     The Aiding And Abetting Claim Fails As A Matter of Law. ....................................... 22

        A.    Plaintiff Fails To Adequately Allege Knowledge As To Jiles...................................... 23

        B.    Plaintiff Fails To Adequately Allege Participation As To Jiles.................................... 25

    VI.    Plaintiff's Claim Objection Count Fails. .................................................................. 28

    VII.   Plaintiff Has Not Properly Served Jiles. .................................................................. 29

CONCLUSION ...................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 45 John Lofts, LLC*,
   599 B.R. 730 (Bankr. S.D.N.Y. 2019) ..................................................................29

*In re Amerco Derivative Litig.*,
   127 Nev. 196 (Nev. 2011) ...........................................................................23, 28

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................7

*Bagley* v. *Beville*,
   2014 WL 28999 (D. Nev. Jan. 2, 2014) ...............................................................27

*Bell Atlantic Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ..........................................................................................7

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
   891 A.2d 150 (Del. Ch. 2005), *aff'd*, 906 A.2d 114 (Del. 2006) ..............................7

*Blue* v. *Tilray Brands, Inc.*,
   2025 WL 519848 (Del. Ch. Feb. 17, 2025) ..........................................................10

*In re Caremark International Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch.1996) ............................................................................14

*City of Newark* v. *Donald M. Durkin Contracting, Inc.*,
   305 A.3d 674 (Del. 2023) ................................................................................10

*Costantini* v. *GJP Developers, Inc.*,
   2015 WL 5122992 (Del. Ch. Aug. 24, 2015) .........................................................9

*In re Cred Inc.*,
   650 B.R. 803 (Bankr. D. Del. 2023), *aff'd*, 658 B.R. 783 (D. Del. 2024).....23, 25n, 26, 27, 28

*In re Cred Inc.*,
   658 B.R. 783 (D. Del. 2024) ..................................................................23, 24, 25

*In re DBSI, Inc.*,
   477 B.R. 504 (Bankr. D. Del. 2012) ..................................................................28

*DeLucca* v. *KKAT Mgmt., L.L.C.*,
   2006 WL 224058 (Del. Ch. Jan. 23, 2006) ...........................................................10

*In re DHP Holdings II Corp.*,
    435 B.R. 264 (Bankr. D. Del. 2010) ...................................................................29

*Dohmen* v. *Goodman*,
    234 A.3d 1161 (Del. 2020) ...............................................................................12

*Dunham Trust Co. as Trustee of Darrell N. Garmann Testamentary Trust 2012* v.
    *Wells Fargo Bank, N.A.*, 2019 WL 489095 (D. Nev. Feb. 7, 2019) .................24, 25

*In re Frederick's of Hollywood, Inc.*,
    2000 WL 130630 (Del. Ch. Jan. 31, 2000), *aff'd sub nom. Malpiede* v.
    *Townson*, 780 A.2d 1075 (Del. 2001) ...............................................................15

*Genworth Financial, Inc. Consolidated Derivative Litig.*,
    2021 WL 4452338 (Del. Ch. Sept. 29, 2021) ......................................................12

*Guzman* v. *Johnson*,
    483 P.3d 531 (Nev. 2021) ...........................................................................19, 20

*Hurtado* v. *Suprenant*,
    2024 WL 2959270 (D. Nev. June 12, 2024)..............................................20, 21, 22

*Lillis* v. *AT&T Corp.*,
    904 A.2d 325 (Del. Ch. 2006)............................................................................10

*In re McDonald's Corp. Stockholder Derivative Litig.*,
    291 A.3d 652 (Del. Ch. 2023)............................................................................17

*Miyayama* v. *Burke*,
    2022 WL 1665211 (D. Nev. May 25, 2022)..........................................19n, 24, 26

*Muney* v. *Arnould*,
    524 P.3d 491 (Nev. 2023), 2023 WL 2111104 (Nev. Feb. 17, 2023) ..................21n

*In re Old Bpush, Inc.*,
    2021 WL 4453595 (D. Del. Sept. 29, 2021) ....................................................11, 14

*In re PennySaver USA Publishing, LLC*,
    587 B.R. 445 (Bankr. D. Del. 2018) ...............................................................11, 29

*Quadrant Structured Prods. Co.* v. *Vertin*,
    102 A.3d 155 (Del. Ch. 2014).............................................................................17

*Raj & Sonal Abhyanker Family Trust on behalf of UpCounsel*, *Inc.* v. *Blake*,
    2021 WL 2477025 (Del. Ch. June 17, 2021).........................................................12

*In re Rhodes Companies, LLC*,
    2013 WL 5785291 (Bankr. D. Nev. July 1, 2013), *report and recommendation*
    adopted, 2013 WL 7020748 (D. Nev. Dec. 27, 2013) ............................................21

*Ruggieri* v. *Hartford Insurance Co. of the Midwest*,
    2013 WL 2896967 (D. Nev. June 12, 2013) ....................................................22

*Snow Phipps Grp., LLC* v. *KCAKE Acquisition, Inc.*,
    2021 WL 1714202 (Del. Ch. Apr. 30, 2021) ..................................................10

*State Farm Mutual Automobile Insurance Co.* v. *Spine Care Delaware, LLC*,
    238 A.3d 850 (Del. 2020) ..............................................................................9

*Stebbins* v. *Geico Insurance Agency*,
    2019 WL 281281 (D. Nev. Jan. 22, 2019) ..............................................21, 22

*Stroud* v. *Grace*,
    606 A.2d 75 (Del. 1992) ..............................................................................18

*In re Tower Air, Inc.*,
    416 F.3d 229 (3d Cir. 2005) ........................................................................16n

*In re Tropicana Ent., LLC*,
    520 B.R. 455 (Bankr. D. Del. 2014) ..............................................................7

*In re Ultimate Acquisition Partners, LP*,
    2012 WL 1556098 (Bankr. D. Del. May 1, 2012) ........................................29

*In re Ultimate Escapes Holdings, LLC*,
    551 B.R. 749 (D. Del. 2016), *aff'd*, 682 F. App'x 125 (3d Cir. 2017) ..................16

*In re Walt Disney Co. Derivative Litig.*,
    906 A.2d 27 (Del. 2006) ..............................................................................12

*Williams* v. *Geier*,
    671 A.2d 1368 (Del. 1996) ..........................................................................18

*In re Xura, Inc. Stockholder Litigation*,
    2019 WL 3063599 (Del. Ch. July 12, 2019) ................................................25

*Zazzali* v. *Hirschler Fleischer, P.C.*,
    482 B.R. 495 (D. Del. 2012) ..................................................................25, 27

**Statutes and Rules**

11 U.S.C. § 502(d) ............................................................................................28

Fed. R. Bankr. P. 7004(b) ..................................................................................29

Fed. R. Bankr. P. 7012(b) ................................................................................................1, 1n

Fed. R. Civ. P. 8(a) ...........................................................................................................24

Fed. R. Civ. P. 9(b) .........................................................................................................4, 5

Fed. R. Civ. P. 11(b)(3)...................................................................................................6, 13

Fed. R. Civ. P. 12(b)(5).......................................................................................................1

Fed. R. Civ. P. 12(b)(6).......................................................................................................1

Local Rule 7012-1...............................................................................................................1n

Nev. Rev. Stat. § 78.138(7)................................................................................................20

Nev. Rev. Stat. § 86.101 ....................................................................................................21

Nev. Rev. Stat. § 86.298 ...........................................................................................21n, 22n

## NATURE AND STAGE OF THE PROCEEDINGS[1]

Plaintiff commenced this adversary proceeding on August 14, 2025.  (Adv. D.I. 1 ("Complaint" or "Compl.")).  Defendant Jon Jiles respectfully submits this memorandum of law in support of his motion to dismiss under Federal Rules of Civil Procedure 12(b)(5) and (6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b).[2]

## SUMMARY OF THE ARGUMENT

1.      Jon Jiles, who served as Chairman of the Board of Prime Core Technologies, Inc. ("Prime Core" and the "Board," respectively), Chairman of the Board of Managers of Prime Trust, LLC ("Prime"), and a member of a special committee tasked with investigating Prime's practices in connection with a previously deprecated Multi-sig Legacy Wallet (the "98f Wallet") during the relevant period (Compl. ¶ 7), discharged his duties in good faith, is not liable for the alleged damages asserted by the PCT Litigation Trust (the "Plaintiff"), and should not be named as a defendant in this action.

2.      Prime was a Nevada-chartered trust company that provided financial infrastructure to fintech and digital asset companies.  (Compl. ¶ 27).  Prime Core, a Delaware corporation, was the sole member of Prime.  (*Id.* ¶¶ 26, 32).  Prime Core filed for Chapter 11 bankruptcy in August 2023 due to a shortfall in customer funds.  (*See* Prime Core Voluntary Petition for Bankruptcy, No. 23-11161 (Bankr. D. Del. Aug. 14, 2023) (D.I. 1)).  An Amended Bankruptcy Plan (the "Plan") was confirmed on December 21, 2023.  (*See* Amended Joint Chapter 11 Plan of

---

[1] Unless otherwise noted, emphasis is added and internal citations and quotations are omitted. References to the "Strong Decl." are to the Declaration of Gregory Strong and accompanying exhibits submitted in support of Jiles's motion to dismiss.  References to the "Jiles Decl." are to the Declaration of Jon Jiles submitted in support of his motion to dismiss.

[2] Pursuant to Local Rule 7012-1 and Fed. R. Bankr. P. 7012(b), Jiles presently does not consent to the entry of final orders or judgments by the Bankruptcy Court.

Reorganization, No. 23-11161 (Bankr. D. Del. Dec. 21, 2023) (D.I. 644-1)).  The shortfall occurred because Prime and Prime Core's management team could not access the legacy 98f Wallet in December 2021 and allegedly used customer funds to process withdrawals of assets held in the inaccessible wallet (the "98f Wallet Issue").  It is well documented that the decisions leading to this shortfall were made by certain members of Prime Core's executive management team (of which Jiles was not a part), which intentionally left Prime's Board of Directors, including Jiles, in the dark about strategic decisions and systemic problems at Prime Core.  Familiarity with the underlying facts prompting the filing of Prime Core's bankruptcy petition is presumed herein.[3]

3.    In connection with this bankruptcy proceeding, Plaintiff is attempting to recover funds from a wide range of individuals Plaintiff claims bear responsibility for Prime Core's collapse.  Among other targets, Plaintiff has identified Prime's Directors and Officers ("D&O") insurance policy as a potential source of recovery.  To that end, on August 14, 2025, Plaintiff filed the Complaint, asserting claims for (1) breach of fiduciary duty under both Delaware and Nevada law against Jiles, Thomas Pageler (CEO), Rodrigo Vicuna (CFO), George Brandl (Chief Risk and Security Officer; COO), Roger Wang (President, Global Sales; Chief Product Officer), and Michael Smith (President, Financial Operations) (Counts 1 and 2) (Compl. ¶¶ 182–206); (2) breach of the implied covenant of good faith and fair dealing against Jiles, Pageler, and Smith (Count 3) (*id.* ¶¶ 207–17); (3) aiding and abetting breaches of fiduciary duty against Jiles, Pageler, Vicuna, Brandl, Wang, and Smith (Count 4) (*id.* ¶¶ 218–20); (4) declaratory relief against Jiles (Count 5) (*id.* ¶¶ 221–28); and (5) claim objection against Jiles, Pageler, Vicuna, Brandl, Wang,

---

[3] A recitation of these facts is set forth in Jor Law's First Day Declaration, which was filed on August 24, 2023, in the main bankruptcy action.  (*See* Declaration of Jor Law in Support of Chapter 11 Petitions and First Day Motions, No. 23-11161 (Bankr. D. Del. Aug. 24, 2023) (D.I. 14)).

and Smith (Count 6) (*id.* ¶¶ 229–30).

4.      The Complaint against Jiles fails for several reasons:

a.      ***First***, as explained in Section I, the plain language of the Plan limits Plaintiff's potential recovery against Jiles in "98f Wallet Causes of Action"—such as this one—to insurance proceeds.  Given this limitation on recovery, Plaintiff seeks a declaratory judgment that its breach of fiduciary duty claims against Jiles—which are based on the theory that Jiles failed to disclose financial issues directly and exclusively attributable to the 98f Wallet Issue—are somehow "much broader" than the Plan's definition of "98f Wallet Causes of Action," which includes "any Claim or Cause of action ***arising from or related to*** the Debtors' loss of, or loss of access to, assets held within, the 98f Wallet, and/or the Debtors' use of Cash or other assets to satisfy redemptions or withdrawals by Customers following the loss of access to assets in the 98f Wallet."  (Plan § 1.107).  Plaintiff's request for a declaratory judgment must be rejected, since all of Plaintiff's claims plainly "aris[e] from" and are "related to" the 98f Wallet Issue, and any recovery in this action is thus limited to the applicable insurance policies.

b.      ***Second***, as noted in Sections II and III, Plaintiff's breach of fiduciary duty claims fail under both Delaware and Nevada law, since Plaintiff has failed to allege that Jiles breached any fiduciary duty, and any actions Jiles allegedly took (or allegedly failed to take) fall squarely within the ambit of the business judgment rule.

c.      ***Third***, as explained in Section IV, the claim alleging breach of the implied covenant of good faith and fair dealing fails as a matter of law.  Such claims apply only when a defendant follows the terms of a contract (in this case, Prime's operating agreement), but frustrates the contract's spirit or purpose.  Here, Plaintiff alleges that Jiles breached fiduciary duties under the operating agreement, and thus failed to comply with the contract.  But by alleging a claim for

breach of the implied covenant of good faith and fair dealing, Plaintiff also claims that Jiles complied with that very agreement—an inconsistency Plaintiff does not, and cannot, explain, and one that requires dismissal of this claim and the breach of fiduciary duty claims (which are not pleaded in the alternative).

        d.      **Fourth**, as detailed in Section V, Plaintiff's aiding and abetting claim fails under both Delaware and Nevada law because Plaintiff has not pleaded particularized facts to satisfy the heightened Rule 9(b) standard for claims sounding in fraud, and Plaintiff fails to demonstrate that Jiles had actual or constructive knowledge of any fiduciary breach, relying instead on conclusory, information-and-belief allegations.  Plaintiff has also failed to adequately allege Jiles's participation: the Complaint lacks any allegations—conclusory or otherwise—that Jiles prepared Series B materials, directed wallet "recycling" or the use of customer funds, or otherwise substantially assisted any breach.  Moreover, any post-August 2022 disclosure theory lacks a well-pleaded underlying breach, and must therefore be disregarded.

        e.      **Fifth**, as explained in Section VI, the claim objection count fails because Plaintiff does not allege that Jiles filed a proof of claim against the estates—a prerequisite to disallowance under Section 502(d).  The claim is also premature because Section 502(d) requires a prior judicial determination of liability, and Plaintiff does not, and cannot, point to one.

        f.      **Finally**, as noted in Section VII, service was improper.  The Federal Rules of Bankruptcy Procedure authorize service of process via First-Class Mail, but Jiles only received a copy of the Summons and Complaint via Federal Express.

      5.      For these reasons, and those set forth below, the Complaint fails to plausibly state a claim against Jiles, and must be dismissed with prejudice.

## STATEMENT OF THE FACTS

The Complaint alleges that after losing access to the 98f Wallet, certain Defendants—***not including Jiles***—engaged in a "cover-up," using fiat currency from other customers' accounts to cover withdrawal requests from the 98f Wallet.  (Compl. ¶¶ 1–54).  The Complaint explicitly acknowledges that Jiles, "***unlike the other Defendants, was it appears . . . not directly involved in the 98f Wallet issues***," and did not even allegedly become aware of those issues until February 2022—months after they were discovered and covered up by others.  (*Id.* ¶¶ 7, 154).

Recognizing that Jiles participated in none of the actual wrongdoing relating to the 98f Wallet, the Complaint instead alleges that Jiles knew of, but failed to disclose, that misconduct, in breach of his fiduciary duties.  (*Id.* ¶¶ 7, 16, 141).  But the full extent of the Complaint's allegations concerning the scope of Jiles's supposed knowledge of the 98f Wallet Issue before August 2022 (when the issue was disclosed to the Board) is that Jiles "knew [of the issue] no later than February 2022 (but likely earlier)."  (*Id.* ¶ 154).  The Complaint does not, for example, explain who told Jiles, when, in what context, and whether the full extent of the issue and its potential impact on the Company was thoroughly and candidly laid bare at that time—all despite the fact that Plaintiff concedes the Complaint "sound[s] in fraud" (*id.* ¶ 180), and is thus subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

Moreover, the Complaint acknowledges that the only individuals with knowledge of the 98f Wallet Issue in February 2022 were those involved in the underlying misconduct, and at that time those individuals were engaged in an active "cover-up" of the issue and were affirmatively obfuscating its potential impact on the Company.  (*Id.* ¶¶ 16, 154).  The Complaint does not allege that these individuals—in the midst of their ongoing "cover-up"—fully and candidly disclosed the issue and its potential consequences to Jiles, and such an inference is implausible.  In addition,

since the Complaint's allegations about Jiles's supposed knowledge are not made on information and belief, Plaintiff has represented to the Court under Federal Rule of Civil Procedure 11(b)(3) that the allegations have "evidentiary support." But despite this purported "evidentiary support," Plaintiff has nonetheless chosen to omit any details of Jiles's supposed knowledge from the Complaint, further belying the notion that Jiles was fully aware of the issue's scope and potential consequences. Plaintiff attempts to overcome these obvious and dispositive deficiencies by lumping Jiles into the Complaint's sweeping allegations against the "Defendants," even when those allegations plainly do not relate to Jiles. (*Compare id. ¶* 154 (alleging that Jiles "knew [of the 98f Wallet Issue] no later than February 2022 (but likely earlier)") *with id. ¶* 184 (alleging that "Defendants' discovery of the 98f Wallet [occurred] no later than December 2021")).

Although Plaintiff acknowledges that Jiles was not involved in any of the underlying wrongdoing, Plaintiff nonetheless claims that Jiles should face significantly greater liability than those who were. The Plaintiff does so by claiming that Jiles, once he was supposedly informed of the alleged wrongdoing and cover-up, failed to disclose those issues. (*See, e.g.*, *id.* ¶ 226). This, Plaintiff contends, makes the claims against Jiles "much broader" than what "the Debtors or even this Court intended to include under the definition of 98f Wallet Causes of Action," which includes "any Claim or Cause of Action *arising from or related to* the Debtors' loss of, or loss of access to, assets held within, the 98f Wallet, and/or the Debtors' use of Cash or other assets to satisfy redemptions or withdrawals by Customers following the loss of access to assets in the 98f Wallet." (*Id.* ¶¶ 224, 226). Under the Plan, 98f Wallet Causes of Action "shall be satisfied solely by and to the extent of the proceeds of the Debtors' available Insurance Policies after payment from such Insurance Policies of any and all covered costs and expenses incurred in connection with the

defense of the 98f Wallet Causes of Action." (*Id.* ¶ 223).

While Plaintiff claims that its allegations against Jiles are "much broader" than what was supposedly "intended" to be covered by this definition, Plaintiff's allegations on this point are again limited: "Jiles's acts and omissions did not relate to Prime's loss of access to the 98f Wallet or the decision to use omnibus funds to satisfy Abra's transfer requests. Instead, and as to Jiles, the breach of fiduciary duty [claims] relate[] to Jiles's failure to disclose to—and indeed active misleading of—investors, creditors, and others regarding the true financial condition of Prime during a critical period of Series B funding and thereafter." (*Id.* ¶ 226). Plaintiff does not explain, or attempt to explain—even in conclusory terms—why Jiles's alleged failure to disclose financial issues directly and exclusively attributable to the 98f Wallet Issue do not "aris[e] from or relate[] to" the 98f Wallet Issue, or why Plaintiff believes the Plan "intended" to insulate from personal liability individuals who directly engaged in the wrongdoing giving rise to Prime's collapse, but not those, like Jiles, who refrained from engaging in that alleged misconduct.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Tropicana Ent., LLC*, 520 B.R. 455, 467 (Bankr. D. Del. 2014) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). "[A] formulaic recitation of the elements of a cause of action will not do," and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

**I.    Plaintiff Is Not Entitled To A Declaratory Judgment.**

As a threshold matter, any potential recovery against Jiles is limited to insurance proceeds. While the Plan provides that D&O claims are generally reserved and not released, the Plan specifically provides that recoveries from a 98f Wallet Cause of Action—defined broadly to include "***any*** Claim or Cause of Action ***arising from or related to*** the Debtors' loss of, or loss of access to, assets held within, the 98f Wallet, and/or the Debtors' use of Cash or other assets to satisfy redemptions or withdrawals by Customers following the loss of access to assets in the 98f Wallet" (Plan § 1.107)—against certain parties, including Jiles, are limited to insurance proceeds and cannot reach personal assets:

> "***[A]ny recovery by*** the Wind-Down Debtor or ***the PCT Litigation Trust on account of any 98f Wallet Cause of Action*** (except for Avoidance Actions) ***against any Current Directors or Current Officers***, including in each case by way of settlement or judgment, ***shall be satisfied solely by and to the extent of the proceeds of the Debtors' available Insurance Policies*** after payment from such Insurance Policies of any and all covered costs and expenses incurred in connection with the defense of the 98f Wallet Causes of Action[.]"

(*Id.* § 6.9(b)(i)).  The Plan further provides that "***no party shall*** (x) ***record any judgment against any Current Director or Current Officer*** or any Released Employee, or (y) otherwise ***attempt to collect, directly or indirectly, from the personal assets*** of such Current Directors or Current Officers ***with respect to the 98f Wallet Causes of Action***[.]"  (*Id.* § 6.9(b)(v)).

All of Plaintiff's claims against Jiles arise from or are related to the 98f Wallet Issue (*see, e.g.*, *id.*¶¶ 182–206 (asserting breach of fiduciary duty claims in connection with the 98f Wallet Issue); ¶¶ 207–17 (asserting breach of implied covenant of good faith and fair dealing claims in connection with the 98f Wallet Issue); ¶¶ 218–20 (asserting aiding and abetting breach of fiduciary duty claims in connection with the 98f Wallet Issue)).  Thus, as Chairman of the Board at all relevant

times (*see id.* ¶ 33), the Plan's straightforward provisions apply to Jiles and plainly limit any potential recovery in this action to the remaining insurance proceeds.

Despite this, Plaintiff seeks a declaratory judgment that the breach of fiduciary duty claims against Jiles are "broader" than a "98f Wallet Cause of Action," and that the Plan's limitation on recovery therefore does not apply to Plaintiff's claims against Jiles. (*Id.* ¶¶ 221–28). Plaintiff does so by claiming that the allegations against Jiles relate to Jiles's supposed failure to disclose to investors, creditors, and others information about Prime's financial condition. (*Id.* ¶ 226). But since the financial difficulties underlying this supposed failure to disclose were directly and exclusively caused by the 98f Wallet Issue, those claims by definition "aris[e] from" and are "related to" the 98f Wallet Issue, thus precluding the declaratory judgment Plaintiff seeks.

Under Delaware law, a party seeking a declaratory judgment bears the burden of demonstrating its entitlement to the relief requested. *State Farm Mutual Automobile Insurance Co.* v. *Spine Care Delaware, LLC*, 238 A.3d 850, 860 n.55 (Del. 2020) (reversing lower court's summary judgment grant of declaratory relief). To prevail, a party seeking declaratory relief "must establish, by a preponderance of the evidence, that [it] is entitled to [the] declaratory . . . relief" requested. *Costantini* v. *GJP Developers, Inc.*, 2015 WL 5122992, at *7 (Del. Ch. Aug. 24, 2015). Plaintiff has failed to meet that burden here, since Plaintiff's position—that the breach of fiduciary duty claims against Jiles are "broader" than the types of claims that were limited to insurance recoveries under the Plan (Compl. ¶¶ 226, 228)—cannot be squared with the Plan's plain language, which defines "98f Wallet Cause of Action" expansively to include "***any*** Claim or Cause of Action ***arising from or related to*** the Debtors' loss of, or loss of access to, assets held within, the 98f Wallet, and/or the Debtors' use of Cash or other assets to satisfy redemptions or withdrawals by Customers following the loss of access to assets in the 98f Wallet." (Plan § 1.107; *see also* Compl.

¶ 224).

Courts routinely construe the operative phrases "arising from" and "related to" broadly. *See, e.g.*, *City of Newark* v. *Donald M. Durkin Contracting, Inc.*, 305 A.3d 674, 680 (Del. 2023) ("Delaware courts recognize the phrases 'relating to' and 'arising out of' as paradigmatically broad terms.") (quoting *Lillis* v. *AT&T Corp.*, 904 A.2d 325, 331 (Del. Ch. 2006)); *Snow Phipps Grp., LLC* v. *KCAKE Acquisition, Inc.*, 2021 WL 1714202, at *35 (Del. Ch. Apr. 30, 2021) ("The language 'arising from' or 'related to' is broad in scope under Delaware law."); *DeLucca* v. *KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *10 (Del. Ch. Jan. 23, 2006) (describing "arising out of" and "relating to" as being "far-reaching terms" that lawyers often use "to capture the broadest possible universe"). Accordingly, for Plaintiff's breach of fiduciary duty claims to be "related" to the 98f Wallet Issue, the claims need only be "connected in some way" to that issue—a standard easily met here, since but for the 98f Wallet Issue, there would have been no alleged duty to disclose. *See Blue* v. *Tilray Brands, Inc.*, 2025 WL 519848, at *4 (Del. Ch. Feb. 17, 2025) (recognizing that even "relatively attenuated connections" are sufficient).

Here, Plaintiff contends that Jiles's alleged breach of fiduciary duty does not relate to the 98f Wallet Issue, but instead relates to Jiles's supposed "failure to disclose" and "active misleading of investors, creditors, and others." (Compl. ¶¶ 14, 226). But that argument ignores the fact that the very information Jiles allegedly "fail[ed] to disclose" and "active[ly] misle[d]" others about is the existence and financial consequences ***of the 98f Wallet Issue itself***, meaning all of the allegations against Jiles arise from and relate to the 98f Wallet Issue, and any recovery in this action should thus be limited to insurance proceeds. (*See, e.g.*, *id.* ¶ 14 (alleging that Jiles failed to disclose information regarding the supposed "diversion of assets" to "hide th[e] shortfall" created by the 98f Wallet Issue); *id.* ¶ 16 (alleging that Jiles "was advised ***of the 98f Wallet issues***

10

*and cover-up*, but kept this information from the boards, regulators, investors, and customers"); *id.* ¶ 141 (alleging that when Jiles was informed "*of the 98f Wallet and the ongoing losses associated therewith*," he did not make any disclosures)).

## II.    The Breach Of Fiduciary Duty Claim Fails Under Delaware Law.

Plaintiff broadly alleges that the "Defendants"—including Jiles—breached their fiduciary duties to Prime by, among other things, failing to implement internal controls, falsifying business records, lying to investors, and taking affirmative and improper actions to hide a "massive loss" from investors, creditors, regulators, and others.  (*Id.* ¶¶ 182–93).  As discussed below, the few allegations in the Complaint that actually relate to Jiles do not—and cannot—support a breach of fiduciary duty claim against him.  Under Delaware law, a plaintiff asserting a breach of fiduciary duty claim must plead facts establishing "(1) the existence of a fiduciary duty, and (2) that the fiduciary breached that duty."  *In re PennySaver USA Publishing, LLC*, 587 B.R. 445, 463–64 (Bankr. D. Del. 2018).

Plaintiff alleges that the Defendants owed duties of "care, loyalty and disclosure."  (Compl. ¶ 183).  To plead a breach of the ***duty of care***, a plaintiff must establish that a director's conduct was "grossly negligent," or an "extreme departure from the ordinary standard of care."  *In re Old Bpush, Inc.*, 2021 WL 4453595, at *8 (D. Del. Sept. 29, 2021).  To meet this high burden, the allegations must show that the director was "recklessly uninformed or acted outside of the bounds of reason."  *Id.*  To plead a breach of the ***duty of loyalty***, a plaintiff "must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs."  *Id.* at *11.  To plead a breach of the ***duty to act in good faith*** (a subset of the duty of loyalty), a plaintiff must allege "conduct motivated by a subjective bad intent, or conduct that is an intentional dereliction of duty or the conscious disregard for one's responsibilities."  *Id.*  Bad faith occurs

where a fiduciary (1) "intentionally acts with a purpose other than that of advancing the best interests of the corporation"; (2) "acts with the intent to violate applicable positive law"; or (3) "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006). Here, Plaintiff's breach claim boils down to the theory that Jiles—once informed of the 98f Wallet Issue—supposedly "stayed silent when he had a duty to speak" and allowed Prime Core and Prime to continue operating "business as usual" and "incur substantially more losses." (Compl. ¶¶ 7, 16). Plaintiff's allegations are insufficient under Delaware law.

### A. Plaintiff Has Not Adequately Alleged That Jiles Breached Any Duty.

Plaintiff has failed to allege that Jiles breached any fiduciary duty arising from his position as a director of Prime Core and manager of Prime, and the Complaint's reliance on group pleading does not remedy this failure. *See Genworth Financial, Inc. Consolidated Derivative Litig.*, 2021 WL 4452338, at \*22 (Del. Ch. Sept. 29, 2021) (dismissing claims against defendant officers where the plaintiffs "resorted to group pleading throughout their Complaint" and made "no specific allegations directed against the [o]fficers"); *Raj & Sonal Abhyanker Family Trust on behalf of UpCounsel, Inc.* v. *Blake*, 2021 WL 2477025, at \*4 (Del. Ch. June 17, 2021) (finding that because the complaint included no "specific factual allegations as to [the defendant] in his capacity as interim CEO, it is not reasonably conceivable that he breached his fiduciary duties").

Plaintiff alleges that Jiles's decision not to escalate the 98f Wallet Issue is sufficient to constitute a breach of fiduciary duty. But none of the allegations indicates that escalation was necessary before the full Board was informed of the issue in August 2022. Plaintiff's attempt to shoehorn into a breach of fiduciary claim Jiles's alleged failure to disclose finds no support under Delaware law, which requires that a "director's specific disclosure obligations [be] defined by the context in which the director communicates." *Dohmen* v. *Goodman*, 234 A.3d 1161, 1168 (Del.

2020).  Here, the context makes clear that Jiles had no obligation to escalate the 98f Wallet Issue—to the extent he knew about it—before August 2022.

   *First*, Plaintiff offers no support for the contention that disclosure was required before August 2022.  As an initial matter, although the Complaint alleges that Jiles was made aware of the 98f Wallet Issue "no later than February 2022 (but likely earlier)" (*id.* ¶ 154), the Complaint fails to provide any details about what was allegedly conveyed to Jiles about that issue, who conveyed that information, the context of the communication, or whether the information Jiles received reflected the full scope and seriousness of the issue and its potential consequences, or instead reflected, for example, a mere high-level general awareness of the Company's difficulties recovering funds from a wallet.  The omission of these key facts is notable, since Plaintiff ostensibly has "evidentiary support" for its assertion (*see* Fed. R. Civ. P. 11(b)(3)), but has nonetheless chosen to exclude these key details from the Complaint.  Plaintiff's failure to provide those details is all the more notable because the Complaint concedes that the individuals responsible for the 98f Wallet Issue took affirmative steps to deliberately conceal the issue from Jiles and others (*see, e.g.*, Compl. ¶ 131), making it implausible that Jiles, in fact, received a candid and comprehensive overview of the issue and its potential impact on the Company before the full Board was notified in August 2022.  And in any event, nothing in the Complaint contradicts the conclusion that Jiles genuinely believed—based on the representations of the professional executives tasked with running the Company and involved in the "cover-up"—that the Company's management team would successfully resolve the issue.  In sum, Plaintiff's attempt to hold Jiles liable for failing to disclose information the Complaint does not adequately allege Jiles actually knew must be rejected.

   *Second*, Plaintiff alleges no affirmative conduct by Jiles that would constitute a breach,

and no facts suggesting that Jiles was grossly negligent in his attention to the evolving 98f Wallet

Issue.  *See In re Caremark International Inc. Derivative Litig.*, 698 A.2d 959, 968 (Del. Ch.1996)

("Where a director in fact exercises a good faith effort to be informed and to exercise appropriate

judgment, he or she should be deemed to satisfy fully the duty of attention.").  There are no

allegations, for instance, that the decision to trust Wang, Brandl, and the Company's general

counsel to continue their efforts to access the 98f Wallet before escalating the matter within the

Company was "outside of the bounds of reason."  *In re Old Bpush, Inc.*, 2021 WL 4453595, at *8.

*Third*, Plaintiff alleges no transaction where disclosure of the 98f Wallet Issue would have

been required to avoid an undisclosed, improper interest.  Instead, Plaintiff claims that

amendments to the Prime Operating Agreement and Prime Core bylaws on February 3, 2022 and

March 16, 2022, constituted "interested director transaction[s]" because they altered matters of

liability and indemnification advancement with respect to managers, directors, and officers.

(Compl. ¶¶ 175–78).  But Plaintiff's allegations ignore the plain language of the amendments,

which provided that managers would "not be liable to the Company or to the Members for any

loss or damage sustained by the Company or any Member, *unless* the loss or damage shall have

been the result of fraud, deceit, gross negligence, reckless or intentional misconduct, knowing and

intentional breach of this Agreement, or a knowing violation of law." (*Id.* ¶ 175).  Even if Plaintiff

had adequately pleaded any fraud, negligence, or misconduct (and it has not), these amendments,

by their terms, would not operate to assist anyone in evading liability.  Plaintiff further fails to

offer plausible support for the contention that Jiles was "interested" when these decisions were

made.  Notably, the Complaint does not even allege that Jiles was informed of the inability to

access the 98f Wallet when the Prime Operating Agreement was amended.  (*See id.* ¶ 154 ("Jiles

and Vicuna knew no later than *February 2022*")).  The Complaint thus does not support the

conclusion that Jiles or any other Prime manager was motivated by an undisclosed personal interest in amending the Prime Operating Agreement liability provision. *See Benihana of Tokyo, Inc.* v. *Benihana, Inc.*, 891 A.2d 150, 191 (Del. Ch. 2005) (finding no breach of fiduciary duty with respect to a transaction where "the directors did not act out of a motivation to entrench themselves or any other self-interest" not disclosed or "receive[] a personal benefit not shared by" others), *aff'd*, 906 A.2d 114 (Del. 2006).

**Finally**, and for similar reasons, Plaintiff does not show that the amendment of the Prime Core bylaws was tainted by any ulterior motive. When the bylaws were amended, Jiles's alleged knowledge could not have rendered him interested because, as a director of Prime Core, he would have benefitted from the indemnification advancement amendments regardless of whether he knew about the 98f Wallet or not. *In re Frederick's of Hollywood, Inc.*, 2000 WL 130630, at *7 (Del. Ch. Jan. 31, 2000), *aff'd sub nom. Malpiede* v. *Townson*, 780 A.2d 1075 (Del. 2001) (finding that the complaint "fails to state a claim that [a director] had a disabling self-interest" because he "would [have] receive[d] a [benefit] . . . regardless of" the alleged conflict and thus his "interests were completely aligned with the interests of the shareholders").

### B. The Business Judgment Rule Applies To Jiles's Decision To Trust The Management Team To Investigate The Issue And Attempt To Gain Access To The Wallet.

In any event, Plaintiff's claim fails under Delaware law because, assuming Jiles even knew about the 98f Wallet Issue, his decision to trust the Company's management team—which, unlike Jiles, was responsible for the day-to-day management of the Company—to investigate the issue and seek to gain access to the missing keys is protected by the business judgment rule. Under Delaware law, the business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis and in the honest belief that the action taken was in the best interests of the company." *In re Ultimate Escapes Holdings, LLC*, 551 B.R. 749,

761 (D. Del. 2016), *aff'd*, 682 F. App'x 125 (3d Cir. 2017).  Applying the business judgment rule, "a court will not second-guess the fiduciary's decision as long as it has ***any rational business purpose***, even if the decision ends up being flawed in hindsight." *Id.*[4]  Here, Plaintiff comes nowhere near pleading ***any*** facts suggesting that Jiles (1) did not act on an informed basis (save for information intentionally concealed from him by those orchestrating the "cover-up" of the 98f Wallet Issue), (2) acted in bad faith, or (3) did not honestly pursue the best interests of Prime or Prime Core—let alone facts overcoming the presumption of the business judgment rule.

Plaintiff alleges that Prime executives, including Wang and Brandl, were first alerted to the 98f Wallet's inaccessibility in December 2021 and initiated steps to gain access to it.  (Compl. ¶¶ 65, 131).  However, as Plaintiff concedes, Jiles "***was not directly involved in the 98f Wallet issue***" and allegedly became aware of the issue only in February 2022 (although, as noted, Plaintiff has deliberately chosen to avoid providing any details—conclusory or otherwise—about the scope of the disclosure supposedly made to Jiles).  (*Id*. ¶¶ 7, 154).  The Complaint alleges that around a month after Jiles was allegedly informed of a potential issue with the 98f Wallet, the situation was escalated to Prime's general counsel, who commenced a more formal investigation and initiated outreach to former employees who may have been able to assist in accessing the 98f Wallet.  (*Id*. ¶ 139).  Ultimately, once these steps failed, the Prime Core Board, including Jiles, was informed of the full scope of the issue in August 2022.  (*Id*. ¶ 154).

Plaintiff offers no well-pleaded facts suggesting that Jiles's decision to trust the Company's

---

[4] The Third Circuit has explained that, although "[g]enerally . . . [courts] will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)," "[a] complaint may be dismissed . . . where an unanswered affirmative defense appears on its face." *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005).  Because Plaintiff alleges that the business judgment rule does not apply (*see* Compl. ¶ 12), the affirmative defense is available to Jiles on a motion to dismiss.

professional management team to conduct a thorough investigation was made in bad faith or was not honestly pursued in the best interests of the Company.  As pleaded, the allegations instead support the conclusion that Jiles honestly believed the management team's representations to him that (1) the wallet keys would be recovered from former employees or the wallet would be accessed in some other way; (2) Wang, Brandl, and Prime's general counsel were well equipped to spearhead the search for the keys; and (3) the involvement of more personnel, at least initially, would unnecessarily divert internal resources, sow confusion, and undermine confidence, particularly given the perceived high likelihood of gaining access.  These real-time business decisions are precisely within the ambit of the business judgment rule—notwithstanding Plaintiff's claims to the contrary made with the benefit of 20/20 hindsight.  *See Quadrant Structured Prods. Co.* v. *Vertin*, 102 A.3d 155, 186 (Del. Ch. 2014) (a director who makes a business decision, even with a lower probability of success, "does not become a guarantor of that strategy's success" and the business judgment rule applies); *In re McDonald's Corp. Stockholder Derivative Litig.*, 291 A.3d 652, 692 (Del. Ch. 2023) (finding scope and adequacy of internal information gathering process constituted rational business decision because "the amount of information that it is prudent to have before a decision is made is itself a business judgment").

Similarly, the alleged recommendations by Jiles and others to amend the Prime Operating Agreement and Prime Core bylaws on February 3, 2022 and March 16, 2022, respectively, are protected business decisions.  (Compl. ¶¶ 175–78).  These decisions to more clearly define the responsibilities of managers, directors, and officers to align with market developments and serve the best interests of the Company are fully within the managers' and directors' authority under Delaware law and their broad discretion to manage the "business and affairs of the corporation." *Williams* v. *Geier*, 671 A.2d 1368, 1381 (Del. 1996) (directors' recommendation to amend

corporate charter protected by presumption of business judgment); *see also Stroud* v. *Grace*, 606 A.2d 75, 82–83 (Del. 1992) (directors' actions in adopting and recommending charter and bylaw amendments protected by the business judgment rule where they were not "defensive measures" and did not cause "danger to corporate policy and effectiveness"). The Complaint concedes that, before Board notification, the 98f Wallet Issue was escalated to the Company's general counsel, and an internal investigation was undertaken. (Compl. ¶¶ 133, 139). These actions were rational and prudent business decisions, and even if Jiles was aware of the 98f Wallet Issue, deference to management on these issues would have been an appropriate response.

Plaintiff argues that the business judgment rule does not apply here because "there were falsified financials, one Prime customer was favored over other Prime customers in the midst of a liquidity crisis, and there were material non-disclosures to the boards, regulators, auditors, customers and investors." (*Id.* ¶ 17). However, the Complaint does not plead facts specific to Jiles showing that *he* played any role in the alleged creation of the falsified financial materials or the alleged preferential treatment of certain Prime customers. (*See id.* ¶ 113 (alleging that "*Prime executives*"—a group that, as noted, did not include Jiles—"falsified the company's business records by inputting fake wire transfer deposit entries onto Prime's Internal Ledger"); *see also id.* ¶ 4 ("Brandl and Wang (and, later, Smith), with Pageler's knowledge and acquiescence, . . . favored Abra over other Prime customers."))). Moreover, Plaintiff does not show that the 98f Wallet Issue was material to any Board or shareholder decision undertaken before the issue was disclosed in August 2022. Accordingly, because the Complaint, at bottom, seeks to re-examine—with the benefit of hindsight—whether Jiles made optimal business choices in choosing to trust the Company's professional management team (which Plaintiff acknowledges was deliberately obfuscating the 98f Wallet Issue), Plaintiff's breach of fiduciary duty claim is foreclosed by the

business judgment rule.

## III.    The Breach of Fiduciary Duty Claim Fails Under Nevada Law.

The Complaint also fails to state a claim for breach of fiduciary duty under Nevada law. Under Nevada law, "[a] claim for breach of fiduciary duty customarily has three elements: (1) existence of a fiduciary duty, (2) breach of the duty, and (3) damages as a result of the breach." *Guzman* v. *Johnson*, 483 P.3d 531, 538 (Nev. 2021).  As explained in Section II, *supra*, Plaintiff has failed to adequately allege a breach of fiduciary duty against Jiles in connection with his decision to trust the management team to investigate the 98f Wallet Issue, or the ultimate decision to disclose the issue to the full Board in August 2022.[5]  In addition, Plaintiff has also failed to allege that Jiles's own interests actually affected any transaction or caused any harm to Prime Core, Prime, or their creditors.  *See, e.g.*, *Guzman*, 483 P.3d at 538 (affirming dismissal of breach of fiduciary duty claims where plaintiff had "failed to allege facts showing that . . . individual directors' interests ***actually affected*** the transaction").

Plaintiff has advanced only boilerplate allegations that Jiles "allowed the Debtors to continue to operate" and "incur substantially more debt" (Compl. ¶¶ 214, 216), without showing that earlier disclosure—even if Jiles knew of the full scope of the 98f Wallet Issue before August 2022, which, the Complaint does not support with well-pleaded allegations—would have led the Debtors to cease operations or not incur more debt.  Plaintiff has not alleged that any transaction or decision by the Company, such as approval of the Series B funding round in March 2022, would have been impacted by the disclosure of the then-developing 98f Wallet Issue (and the Complaint fails to allege that Jiles was aware of the full scope and potential impact of the

---

[5] Nevada courts view Delaware courts as persuasive authorities in matters of corporate affairs.  *Cf. Miyayama* v. *Burke*, 2022 WL 1665211, at *6 (D. Nev. May 25, 2022) (the Nevada Supreme Court has favorably cited to Delaware corporate law).

98f Wallet Issue in the first place).  Plaintiff has thus failed to allege that—even if Jiles breached his fiduciary duties (and he did not)—those alleged breaches actually resulted in harm.  *See Hurtado* v. *Suprenant*, 2024 WL 2959270, at *5 (D. Nev. June 12, 2024) ("A breach of fiduciary duty claim requires Plaintiffs to show . . . that the breach ***proximately caused*** the damages.").

Finally, even if Plaintiff had alleged both breach and damages proximately caused by that breach, Plaintiff must also "allege facts that, if true, would show a breach of fiduciary duty and satisfy the two elements of NRS 78.138(7)." *Guzman*, 483 P.3d at 537–38; *see also* Nev. Rev. Stat. § 78.138(7) ("[A] director or officer is not individually liable to the corporation or its stockholders or creditors for any damages as a result of any act or failure to act in his or her capacity as a director or officer unless" (1) the presumption of the business judgment rule is rebutted and (2) "[i]t is proven that" the act constituted a breach of the director's or officer's fiduciary duties and "[s]uch breach involved intentional misconduct, fraud or a knowing violation of law."). Essentially, Plaintiff must advance allegations sufficient to rebut the business judgment rule, which, as explained in Section II, *supra*, it has not.

## IV.   Plaintiff Has Failed To Adequately Allege Breach Of The Implied Covenant.

Plaintiff alleges that Jiles, as an alleged "manager[] of Prime," was "subject to the implied covenant of good faith and fair dealing," (Compl. ¶ 208), and breached that covenant by failing to implement internal controls, falsifying business records, lying to investors, and "[t]aking affirmative and improper actions to hide a massive loss" from investors, creditors, regulators, and others (*see id.* ¶¶ 207–17).  Under Nevada law, "[t]o state a claim for breach of the implied covenants of good faith and fair dealing, a plaintiff must allege: (1) the existence of a contract between the parties; (2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations

under the contract were denied." *Hurtado*, 2024 WL 2959270, at *2.[6]  The implied covenant precludes a scenario "[w]here the terms of a contract are literally complied with but one party to the contract deliberately [contravenes] the intention and spirit of the contract." *Id.*  Indeed, "[t]his cause of action . . . requires **literal compliance** with the terms of the contract." *Stebbins* v. *Geico Insurance Agency*, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019).  Under Nevada law, an operating agreement for a limited liability company is a contract.  *See* Nev. Rev. Stat. § 86.101 ("Operating agreement means any valid agreement of the members as to the affairs of a limited-liability company and the conduct of its business, whether in any tangible or electronic format."); *see also In re Rhodes Companies, LLC*, 2013 WL 5785291, at *6 (Bankr. D. Nev. July 1, 2013) ("An operating agreement is a contract among LLC members that governs their rights and obligations."), *report and recommendation adopted*, 2013 WL 7020748 (D. Nev. Dec. 27, 2013).

Plaintiff alleges that the Prime Operating Agreement imposed a fiduciary duty on Defendants.[7]  (*See* Compl. ¶ 172 ("The Prime Operating Agreement dated as of February 1, 2017, identified Jiles as a Manager . . . [and] the Prime Operating Agreement sets forth specific duties owed by Managers and reaffirms that the Managers owed a 'fiduciary duty' to Prime."); *id.* ¶ 173 ("[t]he Operating Agreement in Section 6.2, Designation of Managers, subsection (a), also

---

[6] The Nevada legislature has codified "[t]he duties of a manager or managing member of a limited-liability company to the limited-liability company, to any series of the limited-liability company, to any member or to another person that is a party to or otherwise bound by the operating agreement" to include "[t]he implied contractual covenant of good faith and fair dealing."  Nev. Rev. Stat. § 86.298; *see also Muney* v. *Arnould*, 524 P.3d 491 (Nev. 2023), 2023 WL 2111104, at *4 (Nev. Feb. 17, 2023) ("NRS 86.298 provides that the only two duties owed by an LLC member to the LLC or any LLC member are [t]he implied contractual covenant of good faith and fair dealing[.]").

[7] Otherwise, Plaintiff's breach of fiduciary duty claim (Count II) would be foreclosed under Nevada law.  *See* Nev. Rev. Stat. § 86.298 (fiduciary duties apply only if "expressly prescribed by the articles of organization or the operating agreement").

required each Manager to be bound by the Manager Agreement [which] provide[d] . . . [that Managers] shall have a fiduciary duty [and] . . . shall at all times act in good faith and represent the Company in an ethical and professional manner in all matters related to the Company and the Company's business")).  Plaintiff alleges that Jiles breached the fiduciary duties imposed under the operating agreement.  In so alleging, Plaintiff must, by definition, assert that Jiles has not complied with the terms of the operating agreement.  Since these allegations are mutually exclusive—that is, Plaintiff cannot simultaneously allege that Jiles breached and complied with the exact same contract at the exact same time—both the breach of the implied covenant claim and the breach of fiduciary claims should be dismissed.  *See Ruggieri* v. *Hartford Insurance Co. of the Midwest*, 2013 WL 2896967, at *3 (D. Nev. June 12, 2013) (reasoning that "allegations that a defendant violated the actual terms of a contract are incongruent with th[e] cause of action [for breach of the implied covenant of good faith and fair dealing] and insufficient to maintain a claim"); *Hurtado*, 2024 WL 2959270, at *2 (dismissing breach of implied covenant of good faith and fair dealing claim where "[r]ather than alleging that Defendant literally complied with the terms of the contract, Plaintiffs specifically allege that he breached it"); *Stebbins*, 2019 WL 281281, at *3 (rejecting plaintiff's invocation of the pleading in the alternative doctrine, and reasoning that a complaint that alleges the "same allegation[s] for both breach of contract and breach of the implied covenant of good faith and fair dealing" cannot survive a dismissal motion).

## V.   The Aiding And Abetting Claim Fails As A Matter of Law.

Plaintiff alleges that Jiles aided and abetted the other Defendants' alleged breaches of their respective fiduciary duties by "knowingly participating in th[o]se breaches of fiduciary duties and by providing material assistance."  (Compl. ¶ 219).  Plaintiff's aiding and abetting claim against Jiles, brought under both Nevada and Delaware law, fails because Plaintiff has not alleged that

Jiles knowingly participated in the underlying breach, such that Jiles could plausibly be claimed to have culpably assisted in the tort complained of.  The standards for pleading an aiding and abetting breach of fiduciary duty claim are equivalent under Delaware and Nevada law.  *See In re Cred Inc.*, 650 B.R. 803, 820 (Bankr. D. Del. 2023) ("To state a claim for aiding and abetting breach of fiduciary duty under Delaware law, the Trust must establish: (1) the existence of a fiduciary relationship; (2) a breach of the fiduciary's duty; (3) knowing participation in that breach by the defendants; and (4) damages proximately caused by the breach."), *aff'd*, 658 B.R. 783 (D. Del. 2024); *In re Amerco Derivative Litig.*, 127 Nev. 196, 225 (Nev. 2011) ("Although we have not previously recognized a claim for aiding and abetting the breach of a fiduciary duty, we take this opportunity to do so.  ***We adopt the standard applied by Delaware courts***, which requires that four elements be shown: (1) a fiduciary relationship exists, (2) the fiduciary breached the fiduciary relationship, (3) the third party knowingly participated in the breach, and (4) the breach of the fiduciary relationship resulted in damages.").  "To establish knowing participation, one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach."  *In re Cred Inc.*, 658 B.R. 783, 793 (D. Del. 2024).  The aiding and abetting allegations are subject to a heightened pleading standard.  *See id.* ("As with standard fiduciary duty claims, any general allegations are subject to the general pleading requirements of Rule 8(a) while any fraudulent allegations are subject to the heightened pleading requirements of Rule 9([b]).") (alterations in original); *Miyayama* v. *Burke*, 2022 WL 1665211, at *7 (D. Nev. May 25, 2022) (where an "aiding and abetting breach of fiduciary duty claim is grounded in fraud[,] . . . [t]he heightened 9(b) standard . . . applies").

### A.  Plaintiff Fails To Adequately Allege Knowledge As To Jiles.

The Complaint contains no allegations that Jiles was aware of the conduct of any Co-

Defendant rising to the level of a breach of fiduciary duty.  "To establish knowledge, the plaintiff must demonstrate that the aider and abettor had actual or constructive knowledge that their conduct was legally improper."  *In re Cred Inc.*, 658 B.R. at 793.  "Actual knowledge requires that the alleged aider and abettor act knowingly, intentionally, or with reckless indifference[,] . . . that is, with an illicit state of mind."  *Id.*  "Constructive knowledge may be found only if a fiduciary breaches its duty in an inherently wrongful manner by engaging in conduct so egregious so as to put a third party on notice of a breach."  *Id.* at 794.  *See also Dunham Trust Co. as Trust of Darrell N. Garmann Testamentary Trust 2012* v. *Wells Fargo Bank, N.A.*, 2019 WL 489095, at *3 (D. Nev. Feb. 7, 2019) (dismissing secondary liability claim where plaintiff "has not alleged any facts indicating that [defendant] *knew* that [the primary tortfeasor] *was actively breaching his fiduciary duties*").

As noted, Plaintiff advances—at best—only conclusory allegations of Jiles's awareness of the 98f Wallet Issue.  (Compl. ¶ 132 ("On information and belief, the individual officers of Prime that were aware of the 98f issue did not inform the boards of Prime and Prime Core of the issue in 2021 or the first part of 2022 (except for Jiles)."); ¶ 141 (alleging that "when Jiles . . . w[as] informed," he did not "ma[ke] any disclosures to the boards or to prospective investors during the Series B funding efforts"); ¶ 154 (alleging that "Jiles . . . knew no later than February 2022" of the "98f Wallet issue")).[8]  Such allegations—which, as noted, are utterly devoid of any well-pleaded details about what, exactly, Jiles knew, and when he knew it—are insufficient to withstand a motion to dismiss.  *See In re Xura, Inc. Stockholder Litigation*, 2019 WL 3063599, at *3 (Del. Ch. July 12, 2019) (explaining that pleading based "on information and belief is no substitute for well-

---

[8] "[T]hese allegations do nothing to put [the defendant] on notice that [other] executives were purportedly breaching their fiduciary duties.  At best, they demonstrate that there were red flags."  *In re Cred Inc.*, 650 B.R. at 827.

pled facts that will support a reasonable inference of wrongdoing"); *Zazzali* v. *Hirschler Fleischer, P.C.*, 482 B.R. 495, 519 (D. Del. 2012) ("The Trustee's contention that, based upon the numerous and glaring misstatements in the PPMs, Hirschler Fleischer must have known that the Insiders were committing fraud and breaching their fiduciary duties to the TIC investors . . . is unsupported, as the Trustee has failed to plead any fact giving rise to a reasonable inference that Defendant was aware that the PPMs did not contain factually accurate financial information."); *Dunham Trust Co.*, 2019 WL 489095, at *3 (dismissing secondary liability claim where plaintiff "has not alleged any facts indicating that [defendant] knew that [the primary tortfeasor] was actively breaching his fiduciary duties").

### B.  Plaintiff Fails To Adequately Allege Participation As To Jiles.

"To satisfy the requirement of participation, it is sufficient to allege that the third party participated in the [fiduciary] decisions, conspired with [the fiduciary], or otherwise caused the [fiduciary] to make the decisions at issue. . . .  A third party can participate in a fiduciary breach by facilitating or inducing a breach of the duty of care."  *In re Cred Inc.*, 658 B.R. at 794 (alterations in original).

Plaintiff alleges that the "Defendants" breached their fiduciary duties by authorizing and not properly overseeing the recycling of legacy cryptocurrency wallets and managing an effective reconciliation process (Compl. ¶¶ 69–84, 185), but the Complaint contains no well-pleaded allegations even suggesting that Jiles was involved in that process, or that he was even aware of it or any problems associated with it.  Plaintiff likewise alleges that the "Defendants" breached their fiduciary duties through the improper use of customer funds to cover withdrawals left exposed by the inaccessibility of the 98f Wallet (*id.* ¶¶ 106–30, 185), but Plaintiff again fails to allege that Jiles was aware of this conduct, let alone that he "participated" in, directed, facilitated, or was otherwise involved in it.  *See In re Cred Inc.*, 650 B.R. at 829 ("The breach alleged is the gross

mismanagement of debtor, but nothing in the Complaint suggests that defendant was involved in any way with the management of debtor.").  Plaintiff also alleges that the "Defendants" breached their fiduciary duties by participating in a Series B fundraising in March 2022 without disclosing the inaccessible wallet issue (*see* Compl. ¶¶ 141–48), and prepared false and misleading financial statements (*see id.* ¶¶ 149–52, 165).  Plaintiff, however, does not allege that Jiles directed or was involved in preparing the Series B materials—or that he was even aware of the full scope and potential impact of the 98f Wallet Issue at that time—and such a conclusion is implausible since such activities are plainly within the ambit of management, not the Chairman of the Board.  *See Miyayama*, 2022 WL 1665211, at *7 (dismissing aiding-and-abetting claim where the complaint failed to establish "when each Defendant allegedly forged each deed"); *In re Cred Inc.*, 650 B.R. at 824 (declining to credit "tentative and vague assertions" that contained "nothing . . . to suggest that [defendant] was informed of the full scale of the situation at Cred[,]" recognizing that "[i]t [wa]s just as reasonable to conclude [that there was no] . . . cause for concern as it is to conclude that [the defendant knew] . . . that Cred was on the precipice of bankruptcy").

Plaintiff alleges that Prime's officers and executives misled the Board as to the extent of the 98f Wallet Issue and remedial measures taken to that point (Compl. ¶¶ 153–59), and misled investors as to the inaccessibility of the funds stored in the 98f Wallet once the Board was notified (*id.* ¶¶ 160, 185).  Plaintiff, however, acknowledges that the Board was not aware of the 98f Wallet issue until August 2022.  (*See id.* ¶ 154 ("Defendants did not disclose this issue to the full Prime Core Board until August 2, 2022. . . .  This omission was intentional, as multiple attempts to add the information to Q4 2021 and Q1 2022 board reports . . . [n]ever made it to the official board reports."); *id.* ¶ 157 ("Smith knew [that Prime had used customer funds to cover gaps left by the 98f Wallet], but he withheld this information from the boards.  On information and belief, he did

so with the knowledge and acquiescence of the other Defendants who, along with Smith, conspired to keep this information from being properly disclosed."); *id.* ¶¶ 159–60 (discussing the Board meeting minutes from the special August 2, 2022 meeting)).

While the Complaint makes vague references to Jiles allegedly being aware of the 98f Wallet sooner (*id.* ¶¶ 16, 141, 153–54), these allegations provide no details as to what Jiles allegedly knew and when, and certainly do not indicate that Jiles participated in any of the alleged concealment.  Indeed, Plaintiff alleges that Jiles was a member of the Board that the professional management team deliberately misled about these very issues (*see id.* ¶¶ 133–40), belying the notion that Jiles knew of, let alone participated in, the alleged misconduct.  *See In re Cred Inc.*, 650 B.R at 829–30 ("As discussed above, none of the allegations of the Complaint give rise to the plausible inference that [defendant] knew the marketing materials were false."); *Zazzali*, 482 B.R. at 519 ("[T]he Trustee has failed to plead any fact giving rise to a reasonable inference that Defendant was aware that the PPMs did not contain factually accurate financial information."); *Bagley* v. *Beville*, 2014 WL 28999, at *3 (D. Nev. Jan. 2, 2014) (dismissing aiding and abetting breach of fiduciary duty claim where "[p]laintiff does not present any details regarding what specific acts performed by the defendants constituted aiding and abetting or how any individual defendant contributed to the alleged breach of fiduciary duty by defendant").

With respect to the assertion that the "Defendants" impermissibly failed to notify investors of the 98f Wallet Issue once the Board become aware of the extent of that issue in August 2022, for the reasons stated *supra*, this did not breach Jiles's fiduciary duty, and in fact represented a measured approach to uncovering the extent of a problem without causing undue panic in the market.  As a result, Jiles's purported participation (*see* Compl. ¶ 160) cannot form the basis of an aiding-and-abetting claim.  *See In re Cred Inc.*, 650 B.R. at 821 ("[I]n considering a claim for

aiding and abetting a breach of fiduciary duty[,] [the court] must first determine whether an underlying breach of fiduciary duty has been properly alleged[.]"); *In re Amerco Derivative Litig.*, 127 Nev. at 225 ("[A] claim for aiding and abetting the breach of a fiduciary duty[] . . . requires that . . . the fiduciary breached the fiduciary relationship[.]").

## VI. Plaintiff's Claim Objection Count Fails.

Section 502(d) of the Bankruptcy Code provides that the bankruptcy "court shall disallow *any claim* of any entity *from which property is recoverable* [under certain sections of the bankruptcy code] *or that is a transferee of a transfer avoidable* [under certain sections of the bankruptcy code] unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable [under certain sections of the bankruptcy code.]" 11 U.S.C. § 502(d). Plaintiff seeks an order barring any claim Jiles "ha[s] . . . or will in the future be" filed on the Debtors' estates. (Compl. ¶ 230). Plaintiff's prophylactic approach to claim objection must be dismissed as a matter of law.

*First*, Plaintiff's disallowance claim fails because Plaintiff does not allege facts sufficient to show that Jiles submitted a claim against the Debtors' estates. *See In re DBSI, Inc.*, 477 B.R. 504, 517 (Bankr. D. Del. 2012) (dismissing where the "Trustee ha[d] not even alleged that Movants filed any proofs of claim[,]" reasoning that "this Court has previously held that a claim under § 502(d) is premature where the trustee does not yet have a judgment against the transferee"); *In re 45 John Lofts, LLC*, 599 B.R. 730, 750 (Bankr. S.D.N.Y. 2019) ("[A] proof of claim must have actually been filed in the case by the creditor whose claim the debtor seeks to disallow.").

*Second*, a Section 502(d) claim requires a *preexisting* judicial determination that Jiles is liable to Plaintiff. Here, however, Plaintiff "has merely commenced an adversary proceeding," so "Section 502(d) is inapplicable." *See In re Pennysaver USA Publishing, LLC*, 587 B.R. at 468; *In*

*re DHP Holdings II Corp.*, 435 B.R. 264, 272 (Bankr. D. Del. 2010) ("[S]ection 502(d) is triggered ***only after a judgment has been entered*** requiring the turnover of property to the estate."); *In re Ultimate Acquisition Partners, LP*, 2012 WL 1556098, at *3 (Bankr. D. Del. May 1, 2012) (dismissing § 502(d) claim where "[t]he Trustee ha[d] not obtained any judicial determination of Mitsubishi's liability [in the adversary proceeding], and therefore, ha[d] no basis for a section 502(d) claim").

## VII.    Plaintiff Has Not Properly Served Jiles.

The Federal Rules of Bankruptcy Procedure authorize alternative service of process through certain postal channels. Among other things, the Rules provide that "a copy of a summons and complaint may be served by ***first-class mail, postage prepaid***, within the United States." Fed. R. Bankr. P. 7004(b). Plaintiff offers a declaration that it effected service of the Summons and Complaint onto Jiles at two separate addresses via First-Class Mail (*see* Strong Decl., Ex. A, (Adv. D.I. 7-2)). Plaintiff's declaration is contradicted by Jiles's declaration, which attests that he never received a copy of the Summons and Complaint via First-Class Mail at any address. (*See* Jiles Decl. ¶ 4). Rather, Jiles received a copy of the Summons and Complaint via Federal Express, which delivered those documents to his home address in Colorado when he was not present. (*Id.* ¶ 2). Based on these facts, the Plaintiff has failed to properly serve Jiles in accordance with the Federal Rules of Bankruptcy Procedure.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims should be dismissed with prejudice.

Dated: October 13, 2025
      New York, New York

**CAHILL GORDON & REINDEL LLP**


By: */s/ Gregory Strong*
Gregory Strong (No. 4664)
221 W. 10th Street
3rd Floor
Wilmington, Delaware 19801
(302) 884-0001
GStrong@cahill.com

Samson A. Enzer (*pro hac vice* forthcoming)
John MacGregor (*pro hac vice* forthcoming)
Ivan Torres (*pro hac vice* forthcoming)
32 Old Slip
New York, New York 10005
(212) 701-3125
SEnzer@cahill.com
JMacGregor@cahill.com
ITorres@cahill.com

*Attorneys for Defendant Jon Jiles*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am not less than 18 years of age and that on this 13 day of October, 2025, I caused a true and correct copy of the foregoing Declaration of Defendant Jon Jiles in Support of Jon Jiles's Motion to Dismiss the Complaint to be served upon the parties on the attached service list in the manner indicated.

Under penalty of perjury, I declare the following is true and correct.


Dated: October 13, 2025                                 /s/ *Gregory Strong*
Wilmington, Delaware                                  Gregory Strong (No. 4664)

**<u>Service List</u>**

**<u>Via CM/ECF</u>**

Donald J. Detweiler
Morgan L. Patterson
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
don.detweiler@wbd-us.com
morgan.patterson@wbd-us.com

Jason B. Komorsky
Jessica Bagdanov
BG LAW
21650 Oxnard St., Suite 500
Woodland Hills, CA 9167
jkomorsky@bg.law
jbagdanov@bg.law

*Counsel for Plaintiff*

James Ettinger
Michael L. Turrill
HOGAN LOVELLS US, LLP
1999 Avenue of the Stars Suite 1400
Los Angeles, CA 90067
jay.ettinger@hoganlovells.com
michael.turrill@hoganlovells.com

Christopher Page Simon
CROSS & SIMON, LLC
1105 North Market Street, Suite 901
Wilmington, DE 19899
csimon@crosslaw.com

*Counsel for Defendant Rodrigo Vicuna*

Defendant Thomas Pageler, *pro se*

Defendant George Thomas Lewis Brandl, *pro se*

Defendant Roger Wang, *pro se*

Defendant Michael Smith, *pro se*